IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 30, 2018

**STATE OF TENNESSEE v. MICHAEL LEE HUFFORD**

**Appeal from the Criminal Court for Sullivan County**
**Nos. S60181, S60182    James F. Goodwin, Jr., Judge**

_____

**No. E2017-02464-CCA-R3-CD**

_____

The Defendant-Appellant, Michael Lee Hufford, appeals from the order of the Sullivan County Criminal Court revoking his probation. On appeal, the Defendant argues that (1) the trial court erred in denying his motion to dismiss the violation of probation affidavit and arrest warrant, and (2) the trial court erred in revoking his probation and ordering him to serve the remainder of his sentence in confinement. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER , JJ., joined.

Steven D. Bagby, Assistant District Public Defender, for the Defendant-Appellant, Michael Lee Hufford.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Barry P. Staubus, District Attorney General; and Michael Filetti, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In order to resolve the issues presented, it is necessary to delve somewhat into the history of this case. On May 7, 2012, the day of his first trial, the Defendant, acting pro se, was convicted of eleven counts of harassment involving two victims. State v. Michael L. Hufford, No. E2012-02162-CCA-R3-CD, 2014 WL 4403831, at *1 (Tenn. Crim. App. Sept. 8, 2014). In sum, the proof showed that the Defendant had repeatedly engaged in telephone harassment of two female real estate agents in Kingsport, Tennessee. Both victims reported the harassment to police, and phone records linked the telephone calls to the Defendant's home phone and cellular phone. After the jury convicted the Defendant

of the telephone harassment [case number S60,181 counts one through six and case number S60,182 counts one through five], the Defendant was arraigned on the remaining charges of possession of marijuana, drug paraphernalia, and driving on a suspended or revoked license [case number S59,974], id. at *3, and a new trial date was set.

On May 21, 2012, the day the second trial was to commence, the Defendant requested a continuance to obtain counsel. The trial court granted the request; however, it was conditioned on an increase of the Defendant's bond. The Defendant withdrew his request and proceeded to trial, acting pro se. The proof supporting case number S59,974 stemmed from the day officers served the telephone harassment arrest warrant on the Defendant. Officers had observed the Defendant drive into his driveway and later determined that his license had been suspended. Upon arresting the Defendant, officers also recovered drugs and a pipe from his person and drugs from the police cruiser in which he was placed. He was convicted as charged of the remaining counts.

On June 26, 2012, the trial court sentenced the Defendant for all convictions at one hearing, and imposed an effective sentence of seven consecutive terms of eleven months, twenty-nine days at seventy-five percent release eligibility with three terms to serve and four to be suspended to probation.[1] In his direct appeal, the Defendant argued, inter alia, that his waiver of his right to counsel was invalid. This court agreed and reasoned that "[c]onditioning [the Defendant's] request for a continuance [of his second trial] to hire an attorney, thus implicating his right to counsel, upon accepting bond terms that would render him incarcerated was a violation of his constitutional rights." Michael L. Hufford, 2014 WL 4403831, at *8. We reversed the Defendant's convictions for driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia in case S59,974 and remanded for a new trial. In doing so, we also vacated the three concurrent sentences imposed by the trial court and observed that it did not

---

[1] The sentence alignment is complicated, as the trial court imposed partial consecutive sentences. The trial court imposed sentences of eleven months, twenty-nine days for all Class A misdemeanor convictions at seventy-five percent release eligibility and six months for the Class B misdemeanor of driving with a suspended or revoked license at seventy-five percent. The trial court aligned the Defendant's sentences for driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia concurrently with each other. Three of the harassment convictions involving the first victim were aligned consecutively to each other, and three were aligned concurrently with each other and with the driving and drug convictions. Three of the harassment convictions involving the second victim were aligned consecutively to each other, and the remaining two were aligned concurrently with each other and with the sentences for the other harassment convictions. The trial court then ordered the sentences involving the second victim to be served consecutively to those involving the first victim, for an effective sentence of seven consecutive terms of eleven months, twenty-nine days. Finally, the trial court ordered the Defendant to serve three of his sentences for harassment and suspended the remaining four sentences to probation. Michael L. Hufford, 2014 WL 4403831, at *5-7.

affect the three sentences the Defendant was ordered to serve; it merely shortened the length of his suspended sentence from four to three consecutive terms of eleven months, twenty-nine days.  Id. at *12.  We affirmed the judgments and sentences for the eleven counts of harassment for which the Defendant was incarcerated.  Id.

On September 5, 2014, a violation of probation affidavit was filed, and a warrant was issued for the Defendant's arrest.  At the top of the affidavit and arrest warrant form, the case numbers are shown as "S59,974,/S60,181,/S60,182."  Across from the case numbers are two boxes to check to indicate felony or misdemeanor, and the box indicating felony was checked.  The form further provided that the Defendant was

> on the 26th day of June, 202014[sic], convicted of the offense(s) of Driving on Revoked, Possession of Marijuana, Possession of Drug Paraphernelia and Harassment (x11) in the Criminal Court of Sullivan County and received a total effective sentence of Forty-Seven (47) months and Twenty-Six (26) Days.  The aforesaid was granted probation by the Court . . . on 8/4/14; the expiration date of the probationary sentence is 8/4/18.

The affidavit alleged that the Defendant violated the following terms and conditions of his probation:

> Violation o[f] Rule #6) "I will allow my Probation Officer to visit my home, employment site, or elsewhere, and will carry out all instruction he/she gives; and will report truthfully and fully to my Probation Officers as given instruction to report."  To Wit:  The offender reported to the office on 8/8/14 and was given an intake date of 8/19/14 at 1:00pm and also advised that his officer would be PPO Rasn[eck].  The offender never showed for intake date so he was mailed a final notice letter and given a final date to report for intake on 8/28/14 at 9am.  The offender failed to report on that date as well.  Also, PPO Rasn[eck] and PPO McConnell attempted a Home Check on 8/25/14 at address given[.].  An elderly lady answered the door and stated that he does not live there and she thinks the last thing he said was he was going to New York.  No further contact has been made with offender.

Following the Defendant's arrest, the trial court appointed counsel on August 14, 2017.  On September 21, 2017, trial counsel appeared before the court and orally moved to dismiss the probation violation based on "irregularities" in the supporting affidavit. Trial counsel pointed out that the affidavit incorrectly checked the felony box, and all the underlying convictions were misdemeanors.  He also noted that the form listed the wrong date of conviction, showing June 26, 2014, rather than June 26, 2012.  Finally, the form

- 3 -

showed that the Defendant was on probation for driving on a revoked or suspended license, possession of marijuana, possession of drug paraphernalia, and harassment. Defense counsel asserted that the convictions were incorrectly listed since the driving and drug charges were reversed and remanded by this court prior to the Defendant being placed on probation. In denying the motion, the trial court determined that the mistakes were clerical and not "germane to the warrant." It acknowledged that case number S59,974 was reversed and remanded for a new trial by this court. The trial court specifically noted that case number S59,974 was "not part of the violation because that case is still untried as of the filing of the Court of Criminal Appeals opinion. So I'm going to dismiss the warrant on that case number alone[.]"

At the December 6, 2017 violation of probation hearing, the Defendant's probation officer, Maddie Rasneck, was the only witness called to testify. She testified that the Defendant did not go through the probation intake process. The Defendant reported for the first time on August 8, 2014, and was told that he would have intake on August 19, 2014, at 1:00 p.m. The Defendant failed to show on that date and was sent a final letter to the address listed on his reporting form from August 8. The letter indicated that he failed to report on August 19, and he was given another intake date for August 28, 2014, at 9:00 a.m. The Defendant failed to report on August 28. Rasneck testified that a home check was done at the Defendant's listed address, but to her knowledge, the Defendant was not living there. According to Rasneck, the Defendant was found in New York and extradited back to Tennessee.

On cross-examination, Rasneck admitted that she never had any personal contact with the Defendant. When he reported on August 8, the Defendant met with a probation officer, Joe Boyd, who no longer worked with probation. Rasneck agreed that the Defendant's file did not contain any acknowledgment from the Defendant that he received the first report date from Boyd. She explained, "[t]here's an intake notification and I know that there's one kept in the file and there was one given to the [Defendant] of that August 19th date 2014 but I don't have anything signed." Pressed further, Rasneck said there was no documentation that would verify that Boyd did in fact give the Defendant notice of the August 19 date. She said the letter containing the new intake date was sent on August 19 after the Defendant missed his first intake meeting. The Defendant's file verified that a letter was sent, but there was no verification that he received it. Asked if there was a policy that required offenders to receive actual notification of appointment dates in order for missed dates to be used against the offenders as a violation, Rasneck responded, "I mean how things go, they report, they get an intake date. They know they're on probation. They report for intake. No, there's not a policy that they get letters in the mail if they miss. That's like basically their last draw from reporting and he failed to report." Asked how the Defendant could know of the

August 28 appointment if he did not receive notice, Rasneck responded, "Well, I guess not then."

Rasneck testified that she completed the probation violation affidavit and that she mistakenly checked the box indicating "felony" instead of "misdemeanor" on the form. She explained, "I just don't usually do misdemeanor and it was a typo." Confronted with the fact that the report did not accurately reflect the Defendant's entire sentence length, she testified, "It's just the way it was wrote [sic]. That's the way our office wrote it just when Joe Boyd did the paperwork and when the manager looked over it that's 47 months and 26 days is what it came out to be." Rasneck also admitted that the date of conviction should have been listed as June 26, 2012, instead of 2014. She agreed that the affidavit contained a number of errors, but categorized some of them as "honest mistakes." Finally, she testified that she approved the document by signing her name under the notation, "sworn and subscribed to me on this 5th day of September, 2014."

At the conclusion of proof, the trial court revoked the Defendant's probation and reasoned as follows:

> All right, with regard to the errors that [were] marked felony instead of misdemeanor that the sentence impose date was incorrect, that it shows four of the 11/29s versus six, that's all things in the heading. Where the court would have a problem is if the warrant didn't put him on notice of what his charge was[,] which is the nature of the violation[.] I find those other errors are either typographical or harmless. Based on the testimony -- -- I'm looking through the court file and the extradition papers from New York are in the court file. Well, he failed to report and Ms[.] Rasneck put in her warrant that as of the date of the affidavit he'd had no further contact with the office. He was placed on probation. He obviously knew that he was on probation and the court finds him in violation of his probation.
>
> . . . .
>
> . . . [H]e'll serve three 11/29s in [case numbers] 60,181 and 182 [for the harassment convictions].

It is from that order that the Defendant now timely appeals.

## ANALYSIS

### I. Motion to Dismiss the Probation Violation Affidavit and Arrest Warrant.

The Defendant concedes in his brief that absconding from supervision, the basis of the

probation violation, was properly alleged in the affidavit. Relying on State v. Wilson, 6 S.W.3d 504 (Tenn. Crim. App. 1998) and State v. Ferrante, 269 S.W.3d 908 (2008), he nevertheless insists that the affidavit and arrest warrant form was invalid and void based upon the wrong box being checked for classification of offense, the wrong date of conviction for the underlying offenses, and the inclusion of the convictions that were reversed on appeal. Because the affidavit of complaint and arrest form included these errors, the Defendant maintains that it did not meet the necessary procedural and constitutional requirements to properly issue, thereby rendering his probation revocation void. We disagree.

Section 40-35-311 of our Code governs the procedure to revoke a suspended sentence or probation and provides as follows:

> Whenever it comes to the attention of the trial judge that any defendant, who has been released upon suspension of sentence, has been guilty of any breach of the laws of this State or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case. Regardless of whether the defendant is on probation for a misdemeanor or a felony, or whether the warrant is issued by a general sessions court judge or the judge of a court of record, such warrant may be executed by a probation officer or any peace officer of the county in which the probationer is found.

Tenn. Code Ann. § 40-35-311(a); see also State v. Shad Tankersley, No. W2005-02901-CCA-R3-CD, 2007 WL 1259212, at *2-3 (Tenn. Crim. App. Apr. 30, 2007).

The Defendant's reliance on Wilson and Ferrante is misplaced. Each of those cases dealt with challenges to the underlying arrest warrant and affidavit of complaint for purposes of initiating criminal prosecution. This court has repeatedly held that the authority of a trial judge to issue a probation revocation warrant is governed by statute and not by Rules 3 and 4 of the Rules of Criminal Procedure. State v. Roger Dale Chisam, No. C.C.A. 85-194-III, 1985 WL 4424, at *4 (Tenn. Crim. App. Dec. 13, 1985) (rejecting the defendant's contention that the probation revocation warrant was not issued in compliance with all of the requirements of Rules 3 and 4 of the Rules of Criminal Procedure); see also State v. Nora Hernandez, No. M2012-01235-CCA-R3-CD, 2013 WL 1858778, at *6 (Tenn. Crim. App. May 2, 2013) ("Because no affidavit is required by law, the lack of sworn allegations in this case does not invalidate the probation violation warrant."); State v. Bobby Gene Tucker, No. E2001-00017-CCA-R3-CD, 2001 WL 957462, at *2 (Tenn. Crim. App. Aug. 23, 2001) (holding that "revocation proceedings are not rendered void merely because the allegations of fact that, if true, justify

revocation were not placed in affidavit form"); State v. Janie Cousett, No. W1999-01256-CCA-R3-CD, 2000 WL 205055, at *1 (Tenn. Crim. App. Feb. 10, 2000) (stating "unlike an arrest warrant issued pursuant to the Tennessee Rules of Criminal Procedure, issuance of a probation revocation warrant is governed by statute and does not require an affidavit.").

In this case, the probation violation affidavit and arrest warrant were properly issued by a trial judge. We agree with the sentiment expressed in Bobby Gene Tucker, and conclude that "the constitutional validity of the arrest, alone, has no relevance to a probation revocation proceeding about which the defendant has received adequate notice of the charges against him." Bobby Gene Tucker, 2001 WL 957462, at *2. The typographical errors complained of in this case did not deprive the Defendant of such notice. Accordingly, the trial court properly denied the Defendant's motion, and he is not entitled to relief.

**II. Revocation of Probation.** Next, the Defendant argues that the trial court abused its discretion in revoking his probation and ordering him to serve the remainder of his sentence in confinement. A trial court may revoke probation upon a finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. Tenn. Code Ann. § 40-35-311(e). This court will not disturb the trial court's ruling absent an abuse of discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, the defendant must show "that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 646-47 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar, 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); T.C.A. §§ 40-35-308, -310, -311 (2012).

Once again, the Defendant relies upon authority that is inapposite to his case. He cites State v. Stubblefield, 953 S.W.2d 223 (Tenn. Crim. App. 1997), in support of his position that the trial court erred in revoking his probation because "the violation against him was not a violation of law and the record is inadequate to conclude that he was properly advised and/or given adequate notice of the rules and requirements of his state supervised probation." Stubblefield, however, stands for the proposition that a probated

defendant is entitled to reasonable notice of the conduct that is prohibited. Id. at 225. Stubblefield noted that a trial court may revoke a defendant's probation for criminal acts that the defendant committed before he received the probationary sentence "if the trial court was without knowledge of the other criminal acts when it imposed the sentence." Id.

The record supports the trial court's revocation of probation. The Defendant's probation officer testified that his probation period began on August 4, 2014, that the Defendant had met with another probation officer on August 8, 2014, and that the Defendant was told he would have an intake interview on August 19, 2014. The Defendant failed to appear for the August 19 interview, and the probation office sent him a letter scheduling a final intake interview for August 28. When there was no response from the letter, probation officers followed up with a home check and discovered that the Defendant did not live at the address provided. Based on the August 8 intake interview, the Defendant was aware that he was on supervised probation and required to report. See, e.g., State v. Terry Marcum, No. E2012-01846-CCA-R3-CD, 2013 WL 3958454, at *4 (Tenn. Crim. App. July 30, 2013) (rejecting the defendant's due process argument and affirming revocation of probation based on failure to report for an intake interview, by committing domestic assault, and by violating an order of protection). He failed to do so for nearly three years. The trial court did not abuse its discretion is revoking the Defendant's probation and ordering him to serve the remainder of his sentence in confinement. The Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE